1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DEMETRIC TROTTER,                        Case No.  1:21-cv-01302-HBK

12              Plaintiff,                     ORDER DENYING PLAINTIFF'S MOTION
                                              FOR SUMMARY JUDGMENT, GRANTING
13        v.                                  DEFENDANT'S MOTION FOR SUMMARY
                                              JUDGMENT, AND AFFIRMING THE
14   MARTIN O'MALLEY,                         DECISION OF THE COMMISSIONER OF
     COMMISSIONER OF SOCIAL                   SOCIAL SECURITY[2]
15   SECURITY,[1]
                                              (Doc. Nos. 13, 15)
16              Defendant.

17

18

19         Demetric Trotter ("Plaintiff"), seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

21   supplemental security income under the Social Security Act.  (Doc. No. 1).  The matter is

22   currently before the undersigned on the parties' briefs, which were submitted without oral

23   argument.  (Doc. Nos. 13, 15-16).  For the reasons stated, the Court denies Plaintiff's motion for

24   summary judgment, grants Defendant's motion for summary judgment, and affirms the

25

---

[1] This action was originally filed against Kilolo Kijakazi in his capacity as the Commissioner of Social
Security.  (*See* Doc. No. 1). The Court has substituted Martin O'Malley, who has since been appointed the
Acting Commissioner of Social Security, as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d).
[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
§636(c)(1).  (Doc. No. 10).

Commissioner's decision.

## I.  JURISDICTION

Plaintiff protectively filed for supplemental security income on February 11, 2020, alleging a disability onset date of October 1, 2019.  (AR 127-36).  Benefits were denied initially (AR 55-61, 72-76) and upon reconsideration (AR 63-71, 83-88).  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on December 23, 2020.  (AR 28-54).  Plaintiff testified at the hearing and was represented by counsel.  (*Id.*).  The ALJ denied benefits (AR 12-25) and the Appeals Council denied review (AR 1-6).  The matter is before the Court under 42 U.S.C. § 1383(c)(3).

## II.  BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 30 years old at the time of the hearing.  (*See* AR 148).  He completed two years of college.  (AR 34).  He lives in a house with his mother and girlfriend.  (AR 33).  He has no relevant work history.  (AR 47).  Plaintiff testified he can no longer work because of poor vision due to retinitis pigmentosa, headaches, and an inability to be at the "efficiency level [he] should be."  (AR 35-36).  He reports it is difficult to read 10 point font and it causes headaches, he has to lean close to the computer and still gets headaches when reading larger font, he could thread a needle but it would take 10 to 15 minutes, and print of all sizes gets blurry within 5 to 10 minutes.  (AR 37-38).  Plaintiff testified that he walks into walls and objects because his peripheral vision is compromised, he can judge the distance of cars when crossing the street, he can use utensils, he can work with objects the size of a quarter, he is colorblind, and he is sensitive to sunlight but not fluorescent lighting.  (AR 39-42).  He can use the computer for a maximum of 30 minutes, he gets headaches four times a month that last until the next day, and he avoids reading because it causes headaches.  (AR 44).

## III.  STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is

1  governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

2  Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

3  is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

4  evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support

5  a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial

6  evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation

7  and citation omitted).  In determining whether the standard has been satisfied, a reviewing court

8  must consider the entire record as a whole rather than searching for supporting evidence in

9  isolation.  *Id.*

10       In reviewing a denial of benefits, a district court may not substitute its judgment for that of

11  the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

12  to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

13  2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

14  harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

15  nondisability determination."  *Id.* (quotation and citation omitted).  The party appealing the ALJ's

16  decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

17  U.S. 396, 409-10 (2009).

18                **IV.   SEQUENTIAL EVALUATION PROCESS**

19       A claimant must satisfy two conditions to be considered "disabled" within the meaning of

20  the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

21  activity by reason of any medically determinable physical or mental impairment which can be

22  expected to result in death or which has lasted or can be expected to last for a continuous period

23  of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment

24  must be "of such severity that he is not only unable to do his previous work[,] but cannot,

25  considering his age, education, and work experience, engage in any other kind of substantial

26  gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

27       The Commissioner has established a five-step sequential analysis to determine whether a

28  claimant satisfies the above criteria.  See 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

1  Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

2  claimant is engaged in "substantial gainful activity," the Commissioner must find that the

3  claimant is not disabled.  20 C.F.R. § 416.920(b).

4        If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

5  two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

6  C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

7  impairments which significantly limits [his or her] physical or mental ability to do basic work

8  activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's

9  impairment does not satisfy this severity threshold, however, the Commissioner must find that the

10  claimant is not disabled.  20 C.F.R. § 416.920(c).

11        At step three, the Commissioner compares the claimant's impairment to severe

12  impairments recognized by the Commissioner to be so severe as to preclude a person from

13  engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as

14  severe or more severe than one of the enumerated impairments, the Commissioner must find the

15  claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

16        If the severity of the claimant's impairment does not meet or exceed the severity of the

17  enumerated impairments, the Commissioner must pause to assess the claimant's "residual

18  functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

19  ability to perform physical and mental work activities on a sustained basis despite his or her

20  limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

21        At step four, the Commissioner considers whether, in view of the claimant's RFC, the

22  claimant is capable of performing work that he or she has performed in the past (past relevant

23  work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

24  work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

25  the claimant is incapable of performing such work, the analysis proceeds to step five.

26        At step five, the Commissioner considers whether, in view of the claimant's RFC, the

27  claimant is capable of performing other work in the national economy.  20 C.F.R. §

28  416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

1  factors such as the claimant's age, education, and past work experience.  20 C.F.R. §

2  416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must

3  find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of

4  adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

5  therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

6       The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

7  180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

8  Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

9  work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

10  *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

11                    **V.     ALJ'S FINDINGS**

12       At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

13  since February 11, 2020, the application date.  (AR 17).  At step two, the ALJ found that Plaintiff

14  has the following severe impairment: retinitis pigmentosa.  (AR 17).  At step three, the ALJ found

15  that Plaintiff does not have an impairment or combination of impairments that meets or medically

16  equals the severity of a listed impairment.  (AR 17).  The ALJ then found that Plaintiff has the

17  RFC to

18           perform a full range of work at all exertional levels but with the
         following nonexertional limitations: occasional near acuity, far
19         acuity, peripheral acuity, depth perception, and night time vision;
         occasionally perform jobs that require fine near vision; read type font
20         14 points or greater; can use computers or other things that permits
         the user to easily large[sic] text; unable to perform duties that require
21         precise depth perception; should avoid workplace hazards such as
         unprotected heights, and exposure to moving mechanical parts; must
22         avoid use of sharp objects such as tools or knives; cannot engage in
         occupational driving at night; can work with objects the size of a
23         quarter; must avoid work that requires bilateral visual acuity, but is
         able to avoid ordinary hazards in the workplace such as boxes on the
24         floor; can perform visual tasks that do not require the ability to
         clearly identify different colors; must avoid work involving
25         heightened risk of eye injury; must be afforded ability to wear eye
         protection and cannot work in bright sunlight unless allowed to wear
26         sunglasses.

27  (AR 18).  At step four, the ALJ found that Plaintiff has no past relevant work.  (AR 20).  In the

28  alternative, at step five, the ALJ found that considering Plaintiff's age, education, work

                                                5

experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including counter supply clerk, hospital cleaner, and tank cleaner.  (AR 20-21).  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since February 11, 2020, the date the application was filed.  (AR 21).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1.   Whether the ALJ properly considered the medical opinion evidence;

2.   Whether the ALJ properly consider Plaintiff's symptom claims; and

3.   Whether the ALJ erred at step five.

(Doc. No. 13 at 7-21).

## VII.   DISCUSSION

### A. Medical Opinion

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the

claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In June 2020, Plaintiff's treating ophthalmologist Daniel Prescott, M.D. noted Plaintiff

was diagnosed with retinitis pigmentosa, his prognosis was "progressive visual loss," and his visual acuity at the time of the evaluation after best correction was 20/80 in his right eye and 20/100 in his left eye.  (AR 257).  Dr. Prescott opined that Plaintiff could rarely perform work involving near acuity, far acuity, depth perception, accommodation, color vision, and field of vision; was not capable of avoiding ordinary hazards in the workplace; has difficulty walking up or down stairs; cannot work with small objects such as those involved in doing sedentary work; and cannot work with large objects.  (AR 258).  Dr. Prescott also opined that Plaintiff was likely to be off-task 25% or more of a typical workday.  (AR 259).  The ALJ found Dr. Prescott's opinion was minimally persuasive.  (AR 20).

As an initial matter, the ALJ acknowledged that Dr. Prescott is Plaintiff's treating ophthalmologist and "therefore has a longitudinal understanding of the claimant's medical impairments, symptoms, and limitations." (*Id*.).  However, as to supportability, the ALJ additionally found that Dr. Prescott only had a few treatment visits with Plaintiff, "and beyond identifying the claimant's diagnosis and visual acuity, he did not point to any other objective evidence in support of his limitations." (AR 20).  As an initial matter, while it would not be a legally sufficient basis for rejecting the opinion standing alone, the ALJ is permitted to consider the length, purpose, and extent of the treating relationship in considering the persuasiveness of a medical opinion under the new regulations.  *See* 20 C.F.R. § 404.1520c(c)(3); 20 C.F.R. § 404.1520c(a) (directing the ALJ to consider and evaluate the persuasiveness of all medical opinions or prior administrative findings from medical sources).

Plaintiff also argues that Dr. Prescott's opinion is supported by his treatment records, including an objective dilation test that "confirms" a diagnosis of retinitis pigmentosa.  (Doc. No. 13 at 19-20).  However, in considering supportability under the new regulations "the more relevant the medical evidence *and supporting explanations presented by a medical source* are to support" the medical opinion, the more persuasive the medical opinion will be.  20 C.F.R. § 404.1520c(c)(1); 416.920c(c)(1)(emphasis added); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusion."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

1    2005) ("an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and

2    inadequately supported by clinical findings."). As noted by Defendant, "Dr. Prescott did not

3    explain how the frequency, duration or severity of Plaintiff's symptoms caused the limitations he

4    assessed. This is particularly significant given the extreme vision limitations he assessed and the

5    unremarkable examination findings from Plaintiff's most recent examination." (Doc. No. 15 at 8;

6    *see also* AR 20, 223-27 (noting sharper vision since last visit, denial of ocular pain or discomfort,

7    and full field of vision to finger counting)). Based on the foregoing, and regardless of evidence

8    that could be considered more favorable to Plaintiff, substantial evidence supports the ALJ's

9    finding that Dr. Prescott fails to point to objective evidence in support of the opined limitations,

10    including inability to avoid even ordinary objects in the workplace and likelihood to be off task

11    25% or more of a typical workday. (AR 20, 259); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

12    2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's

13    conclusion that must be upheld.").

14        As to the consistency factor, the ALJ found the extreme limitations assessed by Dr.

15    Prescott were inconsistent with Plaintiff's activities and the objective evidence. (AR 20).

16    Initially, the Court notes that Plaintiff fails to identify or address this reasoning in his opening

17    brief. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)

18    (court may decline to address issue not raised with specificity in Plaintiff's briefing); *see also Kim*

19    *v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not

20    "specifically and distinctly argued" in the party's opening brief). Here, the ALJ noted that the

21    opined limitations were inconsistent with Plaintiff's ability to drive, cross the street, judge the

22    distance of cars, help his mom on the computer, cook, and work with small objects such as keys,

23    a quarter, or utensils. (AR 20). The ALJ may discount a medical opinion that is inconsistent with

24    a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-

25    02 (1999). Moreover, the ALJ found the objective evidence does not support the "extreme"

26    limitations assessed by Dr. Prescott, and in support of this finding the ALJ cited Plaintiff's

27    improved visual acuity upon testing at his most recent appointment including full field of vision

28    to finger counting, and his reports that he did not experience ocular pain or discomfort, or

headaches.  (AR 20, 216-20).  When viewing the record as a whole, it was reasonable for the ALJ to conclude that the severity of the opined limitations, including complete inability to avoid ordinary hazards in the workplace and being off ask 25% or more of the workday, were inconsistent with Plaintiff's activities and the objective evidence.  *Burch*, 400 F.3d at 679.

For all of these reasons, the ALJ's finding that Dr. Prescott's opinion was minimally persuasive is supported by substantial evidence after proper consideration of the supportability and consistency factors.

**B.  Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

1     Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

2  be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning

3  the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

4  the medical evidence and other evidence in the record" for several reasons.  (AR 19).

5     First, the ALJ found that Plaintiff's allegations of disability "are less than fully consistent

6  with the record."  (AR 19).  In support of this finding, the ALJ set out the handful of medical

7  records documenting Plaintiff's treatment for retinitis pigmentosa.  In October 2019, it was noted

8  on examination that Plaintiff was unable to see fingers at three o'clock in his right eye and from 8

9  to 10 o'clock in his left eye, had pigment changes and attenuated retinal vessels in both eyes, and

10  had visual acuity of 20/100 with correction and 20/70 with pinhole correction.  (AR 19, 210-15).

11  In January 2020, the month prior to Plaintiff's application for benefits, he reported his vision was

12  sharper due to getting new glasses, he denied ocular pain or discomfort, his visual fields were full

13  to finger counting, and his visual acuity with correction was 20/60 in his right eye and 20/80 in

14  his left eye.  (AR 19, 216-20).  Plaintiff argues "observations made on one physical examination

15  is insufficient to constitute substantial evidence," and further contends that the objective evidence

16  cited by the ALJ is not inconsistent with his testimony.  (Doc. No. 13 at 16-17).  However, the

17  entirety of the medical record is composed of five treatment visits, and the ALJ fully considered

18  the two treatment records that evaluated Plaintiff for his claimed impairment of retinitis

19  pigmentosa.  (AR 19).  Moreover, medical evidence is a relevant factor in determining the

20  severity of a claimant's pain and its disabling effects, and a favorable response to treatment can

21  undermine a claimant's complaints of debilitating pain or other severe limitations.  *Rollins v.*

22  *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)(an ALJ may not discredit a claimant's pain

23  testimony and deny benefits solely because the degree of pain is not supported by objective

24  medical evidence); *see also Tommasetti*, 533 F.3d at 1040.  Here, the ALJ explicitly recognized

25  medical evidence in the record that could be considered more favorable to Plaintiff, and

26  nonetheless found the severity of his symptom claims were not consistent with the record

27  including documented improvement in objective testing and Plaintiff's reported symptoms.  *See*

28  *Burch*, 400 F.3d at 679.  This was a clear and convincing reason for the ALJ to discount

1    Plaintiff's symptom claims.

2         Second, the ALJ found Plaintiff's "reported activities of daily living during the relevant

3    period are not consistent with the extreme limitations he has alleged." (AR 19).  A claimant need

4    not be utterly incapacitated in order to be eligible for benefits.  *Fair*, 885 F.2d at 603; *see also*

5    *Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not

6    in any way detract from her credibility as to her overall disability.").  Regardless, even where

7    daily activities "suggest some difficulty functioning, they may be grounds for discrediting the

8    [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating

9    impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(internal citations

10   omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a).  Plaintiff argues that the ALJ

11   mischaracterized his reported limitations in his ability to concentrate, read print of various sizes,

12   be exposed to sunlight, avoid hazards while walking, see out of the corner of his left and right

13   eye, and use certain objects as "extreme" as opposed to "outlin[ing] the limits of what he can and

14   cannot do." (Doc. No. 13 at 11-14).   However, Plaintiff claims he is unable to work in part

15   because he could not avoid ordinary hazards like running into walls and objects, he could not

16   work with small or large objects, and he cannot concentrate for any length of time without getting

17   a headache. (AR 32, 35, 39).  Thus, it was reasonable for the ALJ to find that Plaintiff's reported

18   activities, including helping his mother with solar panels and computer work, exercising, playing

19   music, and working on things with friends, was inconsistent with his allegations of entirely

20   debilitating functional limitations. (AR 43); *Molina*, 674 F.3d at 1113 (Plaintiff's activities may

21   be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a

22   totally debilitating impairment); *see also Burch*, 400 F.3d at 679.  This was a clear and

23   convincing reason for the ALJ to discount Plaintiff's symptom claims.

24        Finally, the ALJ noted that the record does not reflect additional treatment after January

25   2020, and that the most recent appointment on record occurred a month before the application

26   date. (AR 19).  Unexplained, or inadequately explained, failure to seek treatment or follow a

27   prescribed course of treatment may be the basis for an adverse credibility finding unless there is a

28   showing of a good reason for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  As an

                                            12

1   initial matter, Plaintiff correctly notes that it is "unclear whether the ALJ was criticizing

2   [Plaintiff] for not receiving consistent treatment or not because the ALJ [referenced the timing of

3   the most recent appointment] as a preface in discussing the contents of that last progress note."

4   (Doc. No. 13 at 16).  Plaintiff also argues that the ALJ "if the ALJ was being critical of [Plaintiff]

5   for not receiving regular, current treatment, it must be noted there is no cure for retinitis

6   pigmentosa," and Plaintiff's treating ophthalmologist specifically stated no treatment was

7   required at that time.  (*Id*. (citing AR 226)).  Here, to the extent the ALJ discounted Plaintiff's

8   symptom claims based on a lack of treatment, this was not a clear and convincing reason,

9   supported by substantial evidence, to discount his symptom claims.  However, the error is

10  harmless because the ALJ supported the consistency analysis with substantial evidence, as

11  discussed in detail *supra*.  *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir.

12  2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate

13  disability conclusion).

14         The Court concludes that the ALJ provided clear and convincing reasons, supported by

15  substantial evidence, for rejecting Plaintiff's symptom claims.

16         **C.  Step Five**

17         At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to

18  establish that (1) the claimant is capable of performing other work; and (2) such work "exists in

19  significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2);

20  *Beltran*, 700 F.3d at 389.  The Commissioner can meet this burden by "eliciting the testimony of

21  a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of

22  the claimant."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's hypothetical

23  must be based on medical assumptions supported by substantial evidence in the record which

24  reflect all of a claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

25  The hypothetical should be "accurate, detailed, and supported by the medical record."  *Tackett v.*

26  *Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  If the hypothetical does not reflect all the claimant's

27  limitations, the expert's testimony has no evidentiary value to support a finding that the claimant

28  can perform jobs in the national economy.  *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir.

1   1991).

2        In addition, the occupational evidence provided by a vocational expert should be

3   consistent with the Dictionary of Occupational Titles ("DOT").  *Massachi v. Astrue*, 486 F.3d

4   1149, 1152-53 (9th Cir. 2007).  "The [DOT], a resource compiled by the Department of Labor

5   that details the specific requirements for different occupations, guides the analysis.  If the expert's

6   opinion that the applicant is able to work conflicts with, or seems to conflict with, the

7   requirements listing in the [DOT], then the ALJ must ask the expert to reconcile the conflict

8   before relying on the expert to decide if the claimant is disabled."  *Gutierrez v. Colvin*, 844 F.3d

9   804, 807-08 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)) (also finding

10  ALJ need only resolve conflicts between expert testimony and the DOT that are obvious or

11  apparent); *see also Martinez v. Colvin*, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) ("An

12  example of a conflict between the DOT and a VE's testimony is when the DOT's description of a

13  job includes activities a claimant is precluded from doing, and the VE nonetheless testifies the

14  claimant would be able to perform that job.").  The ALJ may rely on VE testimony that conflicts

15  with the DOT as long as there is "persuasive testimony" to support the deviation.  *Massachi*, 486

16  F.3d at 1153 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

17       Here, the vocational expert ("VE") testified that a hypothetical individual of Plaintiff's

18  age, education, work experience, and residual functional capacity could perform the requirements

19  of representative jobs such as counter supply clerk (DOT 319.687-010), tank cleaner (DOT

20  559.687-062), and hospital cleaning (DOT 323.687-010).  Based on the VE testimony, the ALJ

21  concluded at step five that "considering [Plaintiff's] age, education, work experience, and [RFC],

22  [she] was capable of making a successful adjustment to other work that existed in significant

23  numbers in the national economy."  (AR 21).  Plaintiff argues the ALJ erred in finding that he

24  could perform a significant number of jobs in the national economy. (Doc. No. 13 at 7-10).

25       First, Defendant concedes that there is a conflict between the assessed RFC, and

26  corresponding hypothetical posed to the VE, limiting Plaintiff to work that does not require the

27  ability to clearly identify different colors (AR 18), and the DOT description of the counter supply

28  clerk as requiring color vision occasionally, or up to one-third of the workday.  (Doc. No. 13 at 8

1    (citing DOT 319.687-010, *available at* 1991 WL 672772); Doc. No. 15 at 6 n.3).  However, as

2    argued by Defendant, this error is harmless because the ALJ, relying on VE testimony, identified

3    two other jobs that constitute a significant number of jobs in the national economy.  (Doc. No. 15

4    at 6 n.3); *See Buck v. Berryhill*, 869 F.3d 1040, 1051 & n.2 (9th Cir. 2017) (error may be

5    harmless if VE has identified other jobs that claimant could do and there are a significant number

6    of these jobs in the national economy); *Hernandez v. Berryhill*, 707 F. App'x 456, 458-59 (9th

7    Cir. 2017) (finding any error at step five in considering two jobs was harmless because ALJ

8    properly determined Plaintiff could perform one job identified by the VE that existed in

9    significant numbers in the national economy).

10          Second, the ALJ relied on the vocational expert's testimony that an individual with

11   Plaintiff's age, education, work experience, and RFC could perform the representative occupation

12   of tank cleaner with approximately 75,000 positions nationwide.  (AR 21; DOT 559.687-010,

13   *available at* 1991 WL 683794).  Plaintiff argues that the hypothetical posed to the VE was

14   incomplete, and therefore lacks evidentiary value, because it only listed unprotected heights and

15   exposure to moving mechanical parts as "examples" of workplace hazards, but a "comprehensive

16   list" of hazards defined in the Selected Characteristics of Occupations Defined in the Dictionary

17   of Occupational Titles ("SCO") includes moving mechanical parts of equipment, tools, or

18   machinery; electrical shock; working in high, exposed places; exposure to radiation; working with

19   explosives; and exposure to toxic, caustic chemicals.  (AR 18, 49); SSR 96-9p, 1996 WL 374185,

20   at *9 (Jul. 2, 1996).  Here, the DOT description of tank cleaner includes exposure to explosives

21   and toxic caustic chemicals occasionally or one-third of the workday.  *See* DOT 559.687-010,

22   1991 WL 683794.  Thus, according to Plaintiff, the ALJ erred by not "specifically delineat[ing]

23   hazards including working with explosives and exposure to toxic, caustic chemicals" in the

24   hypothetical question to the VE, and in the alternative, the ALJ failed to resolve an apparent

25   inconsistency between the VE's testimony and the DOT.  (Doc. No. 13 at 9).  This argument is

26   unavailing for several reasons.

27          As to the inconsistency argument, Defendant correctly argues that "Plaintiff's reference to

28   SSR 96-9p is unavailing because it identifies a comprehensive list of limitations.  If the ALJ had

15

generically provided for no exposure to hazards, without any clarification, then Plaintiff might have had a basis for this argument.  However, [the] ALJ specifically explained what hazards Plaintiff should avoid.  Because exposure to chemicals or explosives were not included in the RFC [and the resulting hypothetical to the VE], Plaintiff's argument fails."  (Doc. No. 15 at 6); *see also Christopher V. v. Comm'r, Soc. Sec. Admin*., 2019 WL 93502, at *11 n. 4 (D. Or. Jan. 2, 2019) (emphasis added) ("Plaintiff also argues that one of the two jobs identified by the ALJ requires occasional exposure to toxic/caustic chemicals with is inconsistent with the ALJ's own RFC prohibiting exposure to workplace hazards.  However, the ALJ's decision and the record indicates that 'workplace hazards' addressed hazards *such as* machinery or heights and not those such as fumes, odors, etc.).  Moreover, as to Plaintiff's argument that the ALJ erred by not including limitations on working with explosives or toxic/caustic chemicals in the RFC and hypothetical posed to the VE, Plaintiff fails to cite any evidence in the record to support limitations on those specific hazards.  *See Robbins v. Soc. Sec. Admin,* 466 F.3d 880, 886 (9th Cir. 2006) (ALJ must only include limitations supported by substantial evidence in hypotheticals posed to a vocational expert).  Finally, even assuming, arguendo, that the ALJ erred in finding that Plaintiff could perform the second job of tank cleaner, any error was harmless because ALJ properly relied on VE testimony that Plaintiff could perform a third job that exists in significant numbers in the national economy.  *See Buck*, 869 F.3d at 1051.

Third, the ALJ relied on the vocational expert's testimony that an individual with Plaintiff's age, education, work experience, and RFC could perform the representative occupation of hospital cleaner with approximately 105,000 positions nationwide.  (AR 21; DOT 323.687-010, *available at* 1991 WL 672782).  Plaintiff argues the VE testimony was ambiguous as to all the identified occupations, including hospital cleaner, because Plaintiff's counsel asked on cross-examination whether any of the jobs would require dealing with objects smaller than a quarter, to which the VE replied "I wouldn't know for sure. The DOT does not address that."  (Doc. No. 13 at 9 (citing AR 53)).  The VE further testified that the occupations "typically" do not deal with such items, but "on occasion" the worker would have to deal with parts smaller than a quarter. (*Id*.).  Defendant argues that Plaintiff is attempting to create a conflict "where none exits."  (Doc.

No. 15 at 7).  The Court agrees.  The entirety of the vocational expert testimony is as follows:

> ATTY: And I would ask the vocational expert, does the tank cleaner, hospital cleaner, counter worker ever have to deal with objects smaller than a quarter?
>
> VE: I wouldn't know for sure.  The DOT does not address that. They don't even come close to addressing stuff like that, but I would say typically not.  I mean, there might be, on occasion, little parts that are – that are smaller than a quarter, although that's pretty small. I, you know, as a rule, no.

(AR 53).  It is the province of the ALJ, not this Court, to resolve conflicts and ambiguities in the evidence.  *See Andrews*, 53 F.3d at 1039; *see also Burch*, 400 F.3d at 679 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  Regardless, the Court does not discern any ambiguity here.  While not a model of clarity, the VE ultimately testified "as a rule, no" as to whether these jobs would require an individual to deal with objects smaller than a quarter.  Thus, it was reasonable for the ALJ to rely on the VE testimony to support the finding at step five that there are jobs in significant numbers in the national economy that Plaintiff can perform, including hospital cleaner.

For all of these reasons, the Court finds the ALJ's step five finding was supported by substantial evidence.

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ properly considered the medical opinion evidence, Plaintiff's symptom claims, and the findings at step five.  After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (Doc. No. 13) is DENIED.

2.   Defendant's Cross-Motion for Summary Judgment (Doc. No. 15) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.

3. The Clerk is directed to enter judgment in favor of the Commissioner of Social
Security, terminate any pending motions/deadlines, and close this case.

Dated:   February 8, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE